UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIFFANY NICOLE LANG,

      Petitioner,                             Civil Action No. 14-CV-13180

v.                                      HON. BERNARD A. FRIEDMAN

MILLICENT WARREN,

      Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Tiffany Nicole Lang, confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which she challenges her convictions for first-degree child abuse, Mich. Comp. Laws § 750.136b(2), and torture, Mich. Comp. Laws § 750.85. For the reasons stated below, the Court shall deny the petition.

## I. Background

Petitioner was found guilty but mentally ill following a bench trial in Muskegon County Circuit Court. The Michigan Court of Appeals recited the relevant facts as follows:

### A. THE CHILD'S INJURIES

Destiny Sherrod, Lang's sister, testified that on August 24, 2010, she discovered that Lang had cut off all of her hair when she returned to the apartment that she, Lang, and Lang's three- to four-week-old infant son shared. When Sherrod confronted Lang about cutting her hair, Lang became agitated. Sherrod asked Lang to let the infant sleep with her for the evening because she was concerned for his wellbeing, and she went to bed.

Officer Chad Dejong testified that Lang called the police because a

man was at her home and was refusing to leave.  According to Officer Dejong, Lang appeared to be calm when he arrived, and she described the incident.  As he was about to leave to search for the suspect, Lang started to cry and stated that she had hit her child, but then immediately denied hitting him and explained that the infant had fallen on the floor and hit his head.  Officer Dejong saw a large, swollen spot on the infant's head and burn marks on the infant's thigh.  He called an ambulance.

Sherrod testified that she woke when Officer Dejong arrived.  At that time, she was not aware that the infant was injured.  Officer Dejong testified that Sherrod came up behind Lang and made a hand-gesture at her head to indicate that Lang was crazy.  Sherrod and Officer Dejong stepped into a hallway, and Sherrod asked Officer Dejong to send Lang to Community Mental Health.  Sherrod testified that Lang had been previously committed to a mental health hospital and often had auditory and visual hallucinations.  Sherrod testified that Lang believed that she had a microchip in her head and that everyone was against her.  Officer Dejong testified that Lang did not appear to be suffering from hallucinations.

Dr. N. Debra Simns testified that the infant had skull fractures that she believed were caused by strong force trauma, subgaleal hematomas on both sides of his head where blood had collected between his skull and his brain, fractured femurs below both kneecaps, and a fractured right tibia.  Dr. Simns testified that the infant also had fractured ribs that appeared to be 7 to 14 days old, and had a partially healed pattern of injuries surrounding his genitals that were possibly burns.  Dr. Simns testified that the injuries did not appear accidental.

## B. LANG'S CONFESSIONS

Trish Nesbitt, a registered nurse who worked at the hospital that admitted the infant, testified that Lang told her that she had swung the infant against a closet door five or six times, attempted to suffocate him, and performed fellatio on him.  Nesbitt believed that Lang was in touch with reality when she made those statements.  Bonnie Wood, a social worker, testified that Lang made similar statements to her and did not appear to be suffering from hallucinations at that time.

Dr. Mark Ydenburg, a physician working in the emergency room, testified that Lang first told him that she had accidentally dropped the

2

infant while exiting the bath, but eventually she admitted that she had swung him by his legs into a closet door several times and had attempted to suffocate him. He testified that Lang did not appear to be psychotic, delusional, or suffering from hallucinations.

Officer Dejong testified that he spoke with Lang at the hospital, and she agreed to be committed to a mental health facility. He testified that if she had not agreed, he would have committed her involuntarily. Officer Dejong testified that he spoke with Lang at the mental health facility from about 11:30 A.M. until noon, during which time she gave a videotaped confession.

## C. EVIDENCE CONCERNING LANG'S INSANITY DEFENSE

Dr. Catherine Jawor, a psychiatrist for Community Mental Health, testified that she spoke with Lang from about 10:50 to 11:30 A.M. on the morning that she was committed. Dr. Jawor testified that Lang denied having any delusions or hallucinations, and denied that she felt like she had a microchip in her head. Dr. Jawor diagnosed Lang as suffering from mood and social anxiety disorders, but she did not believe that Lang was having hallucinations.

Dr. Margot Gilbert, a clinical psychologist, interviewed Lang on October 28, 2010. Dr. Gilbert testified that Lang told her that she had a microchip in her head that controlled her behavior and she had attempted to kill her infant son because he also had a microchip in his head and she did not want him to grow up in this world. Dr. Gilbert testified that she believed that Lang was not suffering from psychosis and could have controlled her behavior if she chose to.

Dr. Joseph J. Auffrey, a clinical psychologist, testified that he interviewed Lang on November 4, 2010. Dr. Auffrey diagnosed Lang as suffering from depression, personality disorders, and paranoid schizophrenia. According to Dr. Auffrey, Lang believed that she was controlled by an outside device. Dr. Auffrey believed that Lang could control her behavior in general, but was operating under a psychotic event and did not appreciate the wrongfulness of her conduct at the time that she struck the infant against a door. Dr. Auffrey admitted that Lang's act of concocting stories about how the child was injured suggested that she was aware that she had done something wrong.

## D. THE TRIAL COURT'S FINDINGS AND VERDICT

Before trial, defense counsel moved to suppress Lang's statements to police during the interview at the hospital because she was not free to leave and was not given *Miranda* warnings. The trial court ruled that Lang was not in custody because she was free to leave the interview and return to her hospital room, even though the hospital could restrict her movement to prevent her from leaving the hospital itself. Later, during its verdict, the trial court stated that it "did not rely on any statements that were made by Tiffany Lang in the course of the interview that took place at the hospital" but instead relied on Lang's statements in the emergency room.

Concerning the charge of first-degree child abuse, the trial court found that Lang seriously injured the infant when she swung him against a door. Concerning the charge of torture, the trial court found that the infant suffered brutal, physical pain and that Lang's actions were evidence of her intent to cause it. The trial court found that it was satisfied beyond a reasonable doubt that the prosecution had proven the elements of both crimes. Considering Lang's insanity defense, the trial court found that Dr. Auffrey's opinion was less persuasive than Dr. Gilbert's because Dr. Auffrey qualified his opinions. The trial court found that Dr. Gilbert's opinion that Lang was not suffering from a delusion at the time of the offense was more convincing, in part because Lang did not exhibit delusions or hallucinations shortly after the offense occurred. The trial court also found that Lang appreciated the wrongfulness of her conduct because she shifted stories to relieve herself of culpability.

The trial court concluded that Lang did not sustain her burden to prove that she was legally insane, but found that Lang was mentally ill at the time that she committed the crimes. The trial court therefore found Lang guilty but mentally ill on both charges.

*People v. Lang*, No. 308985, 2013 WL 4081154, at **1-3 (Mich. Ct. App. Aug. 13, 2013) (footnote

omitted). Petitioner's conviction was affirmed on appeal. *See id., lv. den.* 495 Mich. 916 (2013).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court clearly erred and abused its discretion by failing to correctly resolve defendant's challenge to the scoring of OV 11 when the alleged criminal sexual penetration did not arise from the underlying sentencing offense.

II. Defendant's due process and Fifth Amendment right against

4

self-incrimination was violated due to police coercion, and mental illness, as well as the elicitation of a confession without a waiver of rights.

III. Defendant's right to access to the courts and effective assistance of counsel was violated when appellate counsel refused to answer her correspondence and left defendant to raise issues that appellate counsel did not raise.

IV. Defendant's conviction and sentence for torture should be vacated, as it was not supported by legally sufficient evidence, in violation of her constitutional right to due process of law.

V. Defendant is entitled to resentencing where OV 3 was misscored in violation of her state and federal rights to due process.

VI. The trial court abused its discretion in assessing 50 points in the scoring of OV 7.

VII. [W]hat, if any, points should be assessed under the sentencing guidelines of OV 10.

## II.  Standard of Review

Under 28 U.S.C. § 2254(d), a writ of habeas corpus may be issued only if the state court's adjudication of petitioner's claim(s) "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  The following principles govern the application of this standard:

> A legal principle is "clearly established" for purposes of habeas corpus review "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S.Ct. 1171, 175 L.Ed.2d 1003 (2010) (citations omitted). "[T]he relevant decision for purposes of determining 'clearly established Federal law' is the last state court decision that adjudicated the claim on the merits." *Miller*, 694 F.3d at 696 (citation omitted).
> The "contrary to" and "unreasonable application" clauses set

5

forth in 28 U.S.C. § 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). The "contrary to clause" applies when a "state court applies a rule that contradicts the governing law set forth" by the Supreme Court of the United States or if the state court "decides a case differently ... on a set of materially indistinguishable facts." (*Williams v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). The "unreasonable application" clause applies where "the state court correctly identifies the governing legal principle" set forth by the Supreme Court, "but unreasonably applies it to the facts of the particular case." *Bell*, 535 U.S. at 694, 122 S.Ct. 1843 (citing *Williams*, 529 U.S. at 407–08, 120 S.Ct. 1495).

In determining whether a state court's decision unreasonably applied clearly established law, federal courts must focus "on whether the state court's application of clearly established federal law is objectively unreasonable [.]" *Id.* "[A]n unreasonable application is different from an incorrect one." *Id.* (citation omitted).

*Poole v. MacLaren*, 547 F. App'x 749, 751-52 (6th Cir. 2013). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt'"[.] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citations omitted). "The petitioner carries the burden of proof." *Id.*

## III.  Discussion

For clarity's sake, the Court shall discuss petitioner's claims in the chronological order that they arose during petitioner's case in the state courts rather than how she has listed them numerically in her petition.

### A.  Claim # 2.  The confession claims.

Petitioner challenges the admissibility of confessions that she made. A defendant's waiver of his *Miranda* rights is considered valid if it is voluntary, knowing, and intelligent. *See Miranda v. Arizona*, 384 U.S. 436, 444, 475 (1966). Coercive police activity is a necessary predicate to finding that a defendant's waiver of his *Miranda* rights was involuntary. *See Colorado*

6

*v. Connelly,* 479 U.S. 157, 167, 169-70 (1986).  A defendant's deficient mental condition, by itself, is insufficient to render a waiver involuntary. *Id.* at 164-65.  "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Id.* at 165.

Likewise, in determining whether a confession is voluntary, the ultimate question for a court is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. 104, 112 (1985).  In addition to police coercion, these circumstances include "the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health, [and also] the failure of police to advise the defendant of his rights to remain silent and to have counsel present during custodial interrogation." *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993) (citations omitted).  However, without coercive police activity, a confession should not be deemed involuntary. *Colorado,* 479 U.S. at 167.

Petitioner initially challenges the admissibility of statements that she made to the nurse, social worker, and doctor who were working in the emergency room where her son was taken.  This argument fails because petitioner was not speaking to the police when she made these statements and therefore no "coercive police activity" was present.   A defendant's Fifth Amendment rights are not violated when a doctor, nurse, or other medical personnel asks questions of a defendant during medical treatment, because such a person is not acting as an agent of law enforcement.  *See Powell v. Quarterman,* 536 F.3d 325, 343 (5th Cir. 2008); *U.S. v. Romero*, 897 F.2d 47, 52 (2nd Cir. 1990); *U.S. v. Borchardt*, 809 F.2d 1115, 1118-19 (5th Cir. 1987).

Petitioner further contends that the statements that she made to Officer Dejong at

7

her home and again at the mental hospital where she checked herself in should have been suppressed because she was not advised of her *Miranda* warnings.  Petitioner is not entitled to habeas relief on this claim because her statements to Officer Dejong were made spontaneously and not in response to any police questioning.  *Miranda* does not apply in such circumstances.  *See U.S. v. Murphy*, 107 F.3d 1199, 1204 (6th Cir.1997); *Terry v. Bock,* 208 F. Supp. 2d 780, 789 (E.D. Mich. 2002); *U.S. v. Thornton*, 17 F. Supp. 2d 686, 693 (E.D. Mich. 1998).  Further, *Miranda* does not apply to petitioner's statements, both at her home and at the mental hospital, because she was not in police custody when the statements were made.  *See Beckwith v. U.S.*, 425 U.S. 341 (1976); *Mason v. Mitchell,* 320 F.3d 604, 632 (6th Cir. 2003).  Under these circumstances, the Michigan courts reasonably determined that the absence of *Miranda* warnings did not require the suppression of petitioner's statements.

In addition, the admission of petitioner's in-home and video-recorded statements to the police was at most harmless error.  The admission of evidence obtained from a suspect in violation of *Miranda* is considered harmful only if it has a substantial and injurious effect in determining the verdict. *See Kyger v. Carlton*, 146 F.3d 374, 381-82 (6th Cir. 1998).  In light of the additional evidence in this case, including petitioner's properly admitted incriminating statements to emergency room personnel, petitioner's non-Mirandized statements did not have a substantial or injurious influence or effect on the verdict.  Petitioner is not entitled to relief on this claim.

### B.  Claim # 4.  The sufficiency of evidence claim.

Petitioner next contends that there was insufficient evidence presented at trial to establish that she had the requisite mental intent to harm her son.  Petitioner claims that she lacked the requisite intent to commit the offenses because she was legally insane at the time that she

committed the offense.

On habeas review for sufficiency of the evidence, the test is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A habeas court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt," but whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318-19 (emphasis in original). This standard applies equally to bench trials and jury trials. *See U.S. v. Bronzino,* 598 F.3d 276, 278 (6th Cir. 2010). Habeas relief is available "only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011), *quoting Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010).

In the present case, petitioner raised an insanity defense at trial. The judge rejected the defense, choosing instead to find petitioner guilty but mentally ill. Under Michigan law, sanity is not an element of a criminal offense, but an affirmative defense, and therefore a claim that there was insufficient proof of a defendant's sanity is not cognizable in federal habeas review. *See Allen v. Redman,* 858 F.2d 1194, 1200 (6th Cir.1988); *Duffy v. Foltz,* 804 F.2d 50, 54 (6th Cir. 1986); *Johnigan v. Elo,* 207 F. Supp. 2d 599, 612 (E.D. Mich. 2002). Accordingly, petitioner is not entitled to habeas relief on her claim that there was insufficient proof of her sanity.

To the extent petitioner claims that her mental illness negates the specific intent to torture her son, the Court notes that under Michigan law "evidence of mental incapacity short of insanity cannot be used to avoid or reduce criminal responsibility by negating specific intent." *Lang*, 2013 WL 4081154, at *5 n.23 (*quoting People v. Carpenter,* 464 Mich. 223, 237 (2001)).

9

### C.  Claims # 1, 5, 6, and 7.  The sentencing guidelines claims.

In her first, fifth, sixth, and seventh claims, petitioner contends that various variables under the Michigan sentencing guidelines were incorrectly scored.  These claims, which are matters of state law only, are not cognizable on habeas review, because they are essentially state law claims. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003).  Petitioner "ha[s] no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).  Any error the trial court may have committed in calculating her guideline score would not merit habeas relief.  *See id.*

### D. Claim # 3.  The ineffective assistance of appellate counsel claim.

Finally, petitioner claims that her appellate counsel was ineffective for failing to raise her second and fourth through seventh claims on her appeal, forcing petitioner to raise these claims *pro se.*

To show she was denied the effective assistance of counsel, petitioner must show that her attorney's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.*  Second, petitioner must show her defense was prejudiced, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395

F.3d 602, 617 (6th Cir. 2005).

The Michigan Court of Appeals reviewed the claims raised by petitioner and found them to be without merit.  *Lang,* 2013 WL 4081154, at \*\*4-7.  For the reasons stated above, this Court concurs with this assessment.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (*quoting Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Because the Michigan Court of Appeals considered and rejected the claims raised by petitioner in her supplemental *pro se* brief, petitioner is unable to show that she was prejudiced by appellate counsel's failure to raise these claims himself.  *See Donaldson v. Booker,* 505 F. App'x 488, 496 (6th Cir. 2012); *Bentley v. Bock,* 239 F. Supp. 2d 686, 696-97 (E.D. Mich. 2002).  Petitioner is not entitled to relief on this claim.

### IV. Conclusion

For the reasons stated above,

IT IS ORDERED that the petition in this matter for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue because petitioner has failed to make a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2).

11

IT IS FURTHER ORDERED that petitioner may not proceed on appeal *in forma pauperis* because any appeal in this matter would be frivolous.


S/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: June 22, 2015
        Detroit, Michigan